**CHARLOTTE MEMORIAL HOSPITAL, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health & Human Services, Defendant.**

No. C–C–85–310–P.

United States District Court, W.D. North Carolina, Charlotte Division.

July 21, 1987.

Everett J. Bowman, Robinson, Bradshaw & Hinson, Charlotte, N.C., and Leonard C. Homer and Robert E. Mazer, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for plaintiff.

Charles E. Lyons, Asst. U.S. Atty., Charlotte, N.C., and Gary A. Ratner, Asst. Regional Counsel, Atlanta, Ga., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

Plaintiff in this matter has filed a Motion for summary judgment, and Defendant has filed a cross Motion for summary judgment.

A hearing was held at Charlotte, North Carolina on July 17, 1987 at which Gary A. Ratner, Assistant Regional Counsel, Region IV, appeared for Defendant and Robert E. Mazer, Attorney at Law, appeared for Plaintiff.

Under the Medicare Act ("Act") Part A, health insurance is provided for the aged and disabled for hospital and post-hospital services. 42 U.S.C. § 1395 *et seq.* Under that law hospitals under agreement with the Secretary of Health and Human Services ("Secretary") provide a wide range of services to Medicare beneficiaries and are paid from the Medicare Trust Fund, 42 U.S.C. § 1395cc(a), through fiscal intermediaries acting as the Secretary's agent to review claims and make payments.

In the period 1979–81 fiscal years, which is the time period we are concerned with in this case, the Act provides that the hospitals will be reimbursed for their actual "reasonable cost," 42 U.S.C. § 1395f(b)(1), which is determined in accordance with regulations promulgated by the Secretary. 42 U.S.C. § 1395x(v)(1)(A).

The regulations provide for reimbursement to the hospital of all necessary and proper ("allowable") costs for patient care. 42 C.F.R. § 405.451 (now 413.9). Under the regulations the cost data must provide adequate financial data, *and the cost data must be based on the accrual method of accounting. The regulations further provide that under the accrual basis of accounting, expenses are reported in the period when they are incurred, regardless of when they are paid.*

In this case, Plaintiff applied to the intermediary, Blue Cross and Blue Shield of North Carolina ("Blue Cross") which, in accordance with the regulations, reviewed the cost report of Plaintiff and issued its "Notice of Program Reimbursement" on September 30, 1981 for the fiscal year ending September 30, 1979, and on September 30, 1982 for the fiscal years ending September 30, 1980, and 1981.

Blue Cross disallowed compensation earned by executive employees which was held by Plaintiff and invested on their behalf pursuant to a contractual compensation arrangement, on the grounds that it

did not meet all the requirements for reimbursement.

Plaintiff made a timely request for an appeal before the Provider Reimbursement Review Board ("PRRB") pursuant to 42 C.F.R. § 405.1835.

A hearing was held before the PRRB on May 19, 1983 and it affirmed the intermediary's adjustment. The decision of the PRRB was received by Plaintiff on March 15, 1985. By letter dated April 29, 1985, the Administrator of the Health Care Financing Administration declined to reverse, affirm, or modify the decision entered by the PRRB. Plaintiff, having exhausted its administrative remedies, filed this complaint on May 14, 1985, pursuant to 42 U.S.C. § 1395oo (b) and 42 C.F.R. § 405.-1877.

The decision of the PRRB is REVERSED.

## DISCUSSION

This matter is properly before the Court for determination on cross Motions for summary judgment by Plaintiff and by Defendant.

The issues in this case, as contended by Plaintiff, are four in number:

(1) Whether the Secretary may refuse to reimburse Charlotte Memorial for certain executive compensation costs in the year in which they were incurred, contrary to the Secretary's regulations requiring reimbursement in accordance with accrual accounting principles, 42 C.F.R. § 405.453(a).

(2) Whether the Secretary may require Charlotte Memorial to place employee contributions to an executive compensation plan with a trustee or similar funding agency, which funding would eliminate the tax deferral for which the plan was created.

(3) Whether the Secretary may impose certain funding requirements set forth in its Provider Reimbursement Manual as an executive compensation plan funded entirely by employee contributions, contrary to the Manual's express provisions.

(4) Whether the Secretary may hold that federal certificates of deposit are not an "acceptable type fund" in which employee contributions may be held, when he has explicitly approved other funding mechanisms which are identical in all relevant respects.

As stated by Plaintiff on p. 17 of its brief:

Judicial Review of a final decision by the Secretary is conducted under the Administrative Procedure Act, 5 U.S.C. § 706, 42 U.S.C. § 1395oo(f). The Administrative Procedure Act directs that an agency decision be reversed if it is unsupported by "substantial evidence" in the record or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) and (E).

The Court will consider each of parties' arguments as to the finding of the PRRB.

Plaintiff contends that the Secretary's decision disallowing executive compensation costs is inconsistent with Medicare regulations mandating that all participants in the medicare program maintain financial records and be reimbursed pursuant to the accrual method of accounting.

The Deferred Compensation Agreement in this case was established in 1972 and provided that a sum will be withheld from the regular pay of the employee and placed in a deferred compensation account which shall be separately maintained by the hospital for employees and invested by the Hospital. The Agreement further provides in Paragraph 3(D) that the breach by the employee of any of the covenants in subparagraphs (A), (B), and (C) of Paragraph 3 would result in a forfeiture of all rights of the Employee to receive any payments from the amounts set up as a credit to the employee.

The employee's interest under Plaintiff's deferred compensation plan being subject to a substantial risk of forfeiture avoids the pitfall of the economic benefit doctrine under the IRS Regulations which dictates that the promise to pay deferred compensa-

tion constitutes the equivalent of cash to be taxed in the current year at present value.

However, the Secretary contends that Plaintiff's deferred compensation plan runs afoul of the Medicare program's regulations for provider reimbursement of the contribution to the plan.

The contribution by the employee comes from wages earned by the employee and charged as a cost by Plaintiff for purposes of reimbursement by the Secretary, under the Medicare Program. The Secretary's point is that conceivably the employee, when the funds are mingled with Plaintiff's funds, may never see the money that medicare is reimbursing Plaintiff for having paid to the employee as a salary and which may never be paid to the employee and therefore will not be a cost to Plaintiff for which reimbursement is payable. The Secretary contends that there is a substantial risk of forfeiture of payments by the employee contributing to the Deferred Compensation Plan because the deferred compensation is conditioned on the future performance of substantial service, and cites Internal Revenue Code §§ 83(b), 457(e). The Secretary argues that under these circumstances it was entirely correct for the Secretary to determine that expenses of a deferred compensation plan were not *incurred* simply because the employee had completed the *current* performance which gave rise typically, to no more than a *conditional* right to future payment.

The Secretary argues that the Court should consider the case of *United States v. General Dynamics Corp.,* —— U.S. ——, 107 S.Ct. 1732, 95 L.Ed.2d 226 (1987) which states at p. ——, 107 S.Ct. at p. 1735 that

... whether a business expense has been "incurred" so as to entitle an accrual-basis taxpayer to deduct it under § 162(a) of the Internal Revenue Code, 26 U.S.C. Sec. 162(a), is governed by the "all events" test that originated in *United States v. Anderson,* 269 U.S. 422, 441 [46 S.Ct. 131, 134, 70 L.Ed. 347] (1926) ... The test is now embodied in Treas.Reg. 1.461–1(a)(2), 26 C.F.R. § 1.461–1(a)(2) (1986) which provides that "[u]nder an accrual method of accounting, an ex-

pense is deductible for the taxable year in which all events have occurred which determine the fact of liability and the amount thereof can be determined with reasonable accuracy."

That is the "all events" test under the *Treasury* Regulations, not the Secretary's Regulations.

The Secretary's argument would be persuasive if it has the same regulations that the Treasury has; but, it does not. The only regulation the Secretary has on this point is 42 C.F.R. 413.24(b)(2) which provides that under the accrual basis of accounting expenses are reported in the period in which they are incurred, *regardless of when they are paid.* (Emphasis added.)

The Secretary cannot disregard his regulations and adopt those of the Treasury Department without complying with the provisions of 5 U.S.C. § 553(b) through (e) pertaining to rulemaking.

It is hornbook law that an administrative agency is bound by its own regulations and cannot maintain a position contrary to those regulations. *Medical Society of South Carolina d/b/a Roper Hospital v. Heckler,* (D.S.C., 1984) (1984–1 Transfer Binder) Medicare and Medicaid Guide (CCH) ¶ 33,651, *appeal dismissed* (4th Cir. 1984).

To deny Plaintiff reimbursement on the basis of interpretive rules which are inconsistent with the Secretary's regulations would be tantamount to emasculating the requirements of the statute and result in rule by edict from a government agency.

The Secretary's Provider Reimbursement Manual (HIM–15) defines Deferred Compensation as

... renumeration currently earned by an employee, but which is not received until a subsequent period, usually after retirement (2140.1).

Section 2140.2 of HIM–15 provides in pertinent part:

As a condition for provider reimbursement, deferred compensation plans must be funded. Provider payments under unfunded deferred compensation plans will be considered as an allowable cost only

when actually paid to the participating employee and only to the extent considered reasonable....

Plaintiff argues that the Secretary's interpretive guidelines may not cause disallowance of costs which must be reimbursed in accordance with regulations requiring accrual accounting. Section 405.453 of the C.F.R. (now Section 413.24) states that the providers receiving payment on the basis of reimbursable cost must provide cost data which must be based on the accrual basis of accounting. Section 413.24(b)(2) defines accrual basis of accounting: "Under the accrual basis of accounting ... expenses are reported in the period in which they are incurred, regardless of when they are paid."

The PRRB decision to affirm the intermediary's allowance of the compensation held by Plaintiff on behalf of its employees was apparently on the ground that the use of the funds held by Plaintiff for its employees under the Deferred Compensation Agreement were not restricted in any manner, and that HIM–15, Section 2140 requires that a deferred compensation plan be invested in commercial insurance, custodial bank accounts or trust accounts whereas in this case the Deferred Compensation Agreement provided that the fund assets remain the property of the hospital and subject to the claims of its general creditors as well as to forfeiture under the Agreement. The Board further found that the accrued liabilities of the plan contribution were not liquidated within one year of the fiscal year end, and were not properly accrued or reimbursable pursuant to HIM–15, Section 2305.A.

Thus, the sole basis for the PRRB's decision is the Secretary's interpretation of his regulations as set out in HIM–15.

The "interpretation" of 42 CFR § 413.-24(b)(2) by the Secretary in HIM–15 is more than an interpretation; it is more in the nature of a new rule and therefore since the Secretary has not complied with 5 U.S.C. § 553(b) through (e), the Court finds that the Secretary's interpretation should be set aside as not in accordance with the statutes and regulations under the provisions of 5 U.S.C. § 706(2)(A).

The Secretary's regulation 42 CFR 413.-24(b)(2) clearly states the definition of "accrual basis of accounting."

There is nothing in the Regulation to substantiate the PRRB's finding that affirming the Secretary's interpretation in HIM–15, Section 2140 that a deferred compensation plan be invested in commercial insurance, custodial bank accounts or trust accounts or that accrued liabilities for the plan must be liquidated within one year of the fiscal year end as interpreted in HIM–15, Section 2305.A.

The regulation 42 CFR 413.24(a) and (b)(2) is simple and straight forward:

(a) Providers receiving payment on the basis of reimbursable cost must provide adequate cost data. This must be based on their financial and statistical records.... The cost data must be based on an approved method of cost finding and on the accrual basis of accounting.

(b)(2) Accrual basis of accounting. Under the accrual basis of accounting ... expenses are reported in the period in which they are incurred, *regardless of when they are paid.* (Emphasis added.)

When the employee earned his salary that was a cost incurred by Plaintiff which is accrued in its accounts as a payable, until it is paid. The testimony of Mr. William Brigman, a manager of Ernst & Whinney, Accountants, testifying for Plaintiff in the hearing before the PRRB was:

.   .   .   .   .

Q. Under Sec. 405.453 of the Medicare regulations, how should the cost incurred by Charlotte Memorial Hospital pursuant to its executive compensation contract be reflected?

A. On the accrual basis the salary expense when the obligation to the employee is incurred.

Q. And when would that be?

**460**

A. In the year that the services were rendered by the employee, not when the cash is paid.

In *Medical Society of South Carolina, d/b/a Roper Hospital v. Heckler, supra,* appeal dismissed, (4th Cir. Aug. 11, 1984) the court summed up the matter when it stated:

> ... once an employee has earned sick pay benefits the hospital is contractually obligated to make payment in accordance with the relevant sick pay provisions, and has, therefore, actually incurred a cost....

### CONCLUSION

The employees who were in the Deferred Compensation Plan of Plaintiff earned the salary and Plaintiff incurred a debt that accrued on the books of the hospital. There was an agreement by the hospital to pay the funds to the employee. There is no reference in the regulations that the funds must be placed in a custodial bank account, or trustee account. Neither is there any requirement that the accrued debt be treated any different than any other accrued debt. That the hospital's creditors may be able to make claims on the funds or that there may be a forfeiture by the employee does not change its status as an accrued debt, under the Secretary's Regulations.

The Secretary's interpretation cannot be used to deny the hospital, and consequently other patients of the hospital reimbursement for costs it has incurred in the form of earned salaries of its executives, in direct contradiction of his regulations.

The Court will file a Judgment in accordance with this Memorandum of Decision.

### JUDGMENT

THIS MATTER is before the Court on cross Motions for summary judgment by Plaintiff and Defendant.

In accordance with the Memorandum and Decision filed simultaneously with this Judgment, the Court finds that there are no material facts in dispute and that Plaintiff is entitled to judgment as a matter of law.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that the decision of the Provider Reimbursement Review Board is *REVERSED*, and the Secretary shall reimburse Charlotte Memorial Hospital for its executive compensation costs for the cost years ending September 30, 1979, 1980, and 1981 determined in accordance with 42 U.S.C. § 1395*oo*(f)(2) plus interest from the date of this Judgment at the rate of 6.64%, plus the costs of Court as may be determined by the Court.

Each party will pay its own attorney fees.